**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**


| | | |
|---|---|---|
| **POLLACK RESEARCH & DESIGN, INC.,** | : | |
| **d/b/a READING CRANE &** | : | |
| **ENGINEERING COMPANY** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO.   15-3693** |
| | : | |
| **DAVID ROUND COMPANY, INC.** | : | |


<u>**MEMORANDUM OPINION**</u>

**SCHMEHL, J.  /s/ JLS**                              **FEBRUARY  27, 2017**


Plaintiff Pollock Research & Design, Inc. d/b/a Reading Crane & Engineering Company ("Reading Crane") brought this breach of contract action, claiming the defendant DRC Acquisition, Inc. d/b/a The David Round Company ("David Round") violated the terms of a purchase order contract when it failed to supply two functioning hoists to Reading Crane in a timely manner. Reading Crane demands that David Round accept return of the hoists and issue a refund. David Round has refused. Presently before the Court are the parties' cross-motions for summary judgment. For the reasons that follow, the Court will construe the motions as cross-motions for partial summary judgment, grant Reading Crane's motion and deny David Round's motion.


<u>**STANDARD OF REVIEW**</u>

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A motion for summary judgment will not be defeated by 'the mere existence' of some disputed facts, but will be denied when there is a genuine issue of material fact." *Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 581 (3d Cir. 2009)(quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S.

242, 247-248 (1986)). A fact is "material" if proof of its existence or non-existence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

In undertaking this analysis, the court views the facts in the light most favorable to the non-moving party. "After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party." *Pignataro v. Port Auth. of N.Y. and N.J.*, 593 F.3d 265, 268 (3d Cir. 2010) (citing *Reliance Ins. Co. v. Moessner*, 121 F.3d 895, 900 (3d Cir. 1997)). While the moving party bears the initial burden of showing the absence of a genuine issue of material fact, meeting this obligation shifts the burden to the non-moving party who must "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250.

Notably, "[t]he rule is no different where there are cross-motions for summary judgment." *Lawrence v. City of Philadelphia*, 527 F.3d 299, 310 (3d Cir. 2008). As stated by the Third Circuit, "'[c]ross-motions are no more than a claim by each side that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist.'" Id. (quoting *Rains v. Cascade Indus., Inc.*, 402 F.2d 241, 245 (3d Cir. 1968)).

## FACTUAL BACKGROUND

The following facts are not in dispute:

1.  On or shortly before February 28, 2014, Reading Crane supplied detailed specifications to and requested a quote from David Round for a 15 ton hoist. (ECF 26-1, ¶ 4.)

2.  In response, David Round's Director of Sales and Marketing, Matthew Downing ("Downing") sent Reading Crane a detailed three-page Quote, along with David Round's standard Terms & Conditions of Sale. (ECF 26-4, pp. 3-5) (February 28, 2014 Quote) and (ECF 26-4, pp. 7-8) (Terms & Conditions of Sale).

3.  Based on communications between Reading Crane and David Round, Downing revised the Quote to account for "Special Built for Clearance Requirements" and sent the revised Quote dated April 15, 2014 back to Reading Crane. (ECF 26-4, pp. 10-12.) (April 15, 2014 Quote).  The revised Quote detailed an order for two hoist units.

4.  The hoists were to be used by Exelon, a customer of Reading Crane, at its Peach Bottom Nuclear facility.

5.  The April 15, 2014 Quote contained detailed product specifications which noted that the hoists were to be "Special Built for Clearance Requirements," the price for two hoists, shipment terms, a one-year warranty, and payment and delivery terms. (ECF 26-4, pp.10-12.) The delivery terms stated that the hoists would be delivered "[a]pproximately 16 weeks to ship after receipt of order and drawing approval (if required), subject to component availability. Allow about 2 weeks for submittal drawing if required." (*Id*., p. 12.)

6.  The April 15, 2014 Quote also stated, *inter alia*, that "All orders and sales of goods supplied shall be subject to our standard Terms & Conditions of Sale attached. Terms inconsistent with those stated herein, which may appear on Purchaser's formal order, will not be binding on the Seller." The Quote also stated that "Equipment is built to order. Orders are non-cancellable & non-returnable upon acceptance of the purchase order." (*Id.*, p.11.)

7.  David Round's standard Terms and Conditions contained the following limited warranty:

LIMITED WARRANTY.: THE DAVID ROUND COMPANY manufactured and branded Products are warranted against defect in material and workmanship for a period of one year to the original purchaser. Products resold by THE DAVID ROUND COMPANY carry the original manufacturer's warranty. Any products found to be defective in material or workmanship will be repaired, replaced with same or similar device, or refunded at THE DAVID ROUND COMPANY'S sole discretion. Customer must obtain a Return Material Authorization number from THE DAVID ROUND COMPANY before returning any Products under warranty to THE DAVID ROUND COMPANY. Customer shall pay expenses for shipment of repaired or replacement Products to and from THE DAVID ROUND COMPANY. After examining and testing a returned product, if THE DAVID ROUND COMPANY concludes that a returned product is not defective, Customer will be notified, the product returned at Customer's expense, and a charge made for examination and testing. This Limited Warranty is void if failure of the Products has resulted from accident, abuse, misapplication, improper calibration by Customer or unauthorized maintenance or repair. (ECF 26-4, p. 7.)

8. Paragraph 4 of David Round's standard Terms and Conditions, which were specifically incorporated into its Quote, states as follows: "ORDERS: All orders are subject to acceptance by The DAVID ROUND COMPANY. THE DAVID ROUND COMPANY'S booking of an order shall constitute its acceptance of an order." (*Id.*)

9. In response to the revised April 15, 2014 Quote, Reading Crane issued a Purchase Order dated May 20, 2014 to David Round for two "David Round Lo-Hed Wire Rope Hoist per quote." (ECF 26-4. p. 14.) In the box captioned "P/N-ID#" were the words "See Attached Quote." (*Id.*)

10. Lake averred that the "P/N-ID#" references the product being purchased and was not an acceptance of David Round's quote or the terms contained therein." (ECF 30, Ex. A, ¶ 4.)

11. The Purchase Order stated that the "Date Required" for the two hoists was September 8, 2015. (ECF 26-4, p. 14.)  The Purchase Order also stated that "Purchase Order subject to Reading Crane & Engineering Conditions of Sale" which were attached to the Purchase Order. ( *Id.*)

12. Reading Crane's President, Kenneth Lake, averred that the "[h]oists were intended to be installed during a maintenance shutdown at the Exelon Peach Bottom Nuclear facility.

4

Ergo, time was of the essence for delivery of the Hoists as reflected in Reading's purchase order." (ECF 25-2. ¶ 5.)

13. Lake further averred that "David Round was selected as the designer and manufacturer of the Hoists based on the fact they had supplied other hoists using the Magnetek Variable Frequency Drive in the Peach Bottom facility and upon their representation that they were qualified to perform the work." (Id at ¶ 7.)

14. The same day that David Round received the Purchase Order (May 20, 2014), it issued an "Order Acknowledgement" to Reading Crane. (ECF 26-4, p. 16.) The Order Acknowledgment identifies, *inter alia*, the order date as 5/20/14, references Reading Purchase Order #PO-3830, ship date of 9/8/14, generally describes the hoists and component parts and states Drawing Approval is Required. (*Id.*) The September 8, 2014 delivery date was subsequently confirmed via email correspondence between the parties on June 29, 2014 and August 26, 2014. (ECF 25-10, 25-11.)

15. According to the Declaration of Downing, David Round issued the Order Acknowledgment to Reading Crane "only because the purchase order incorporated the April 15, 2014 quote." (ECF 26-1, ¶ 10; ECF 26-4, p. 16.)

16. David Round's controller, David Fitch ("Fitch") testified that to his knowledge no one at David Round read Reading Crane's Purchase Order before David Round submitted its Order Acknowledgment. (ECF 25-9, pp. 58-59.) Fitch further testified that he was not aware if anyone at David Round objected to the terms of Reading Crane's Purchase Order. (*Id.* p. 60.)

17. Lake averred that "[a] review of Reading's records does not indicate David Round's "'standard terms and conditions'" were attached to the Order Acknowledgment." (ECF 25-2, ¶ 8.).

18. Fitch testified that while David Round's standard Terms and Conditions always accompany its Order Acknowledgments, he ultimately did not know, despite having tried

to determine, if the standard Terms and Conditions accompanied the May 20, 2014 Order Acknowledgment. (ECF 25-9, pp. 13-14.)

19. During his deposition, Fitch admitted that David Round would not "have considered the order accepted prior to the order acknowledgment being issued," (ECF 25-9, p. 12) and David Round "had not agreed to fulfill [the] purchase order until the acknowledgment was sent out." (*Id*. p. 42.)

20. Downing averred that "[t]he hoists subsequently were custom built by David Round in accordance with Reading Crane's specifications, which included the installation of Magnetek variable frequency drives . . ." (ECF 26-1, ¶ 13.)

21. On September 8, 2014, David Round notified Reading Crane that it would not meet the September 8, 2014 delivery date due to issues with the "drums" provided by its supplier. (ECF 25-4, p. 58.)

22. On September 30, 2014, the hoists were delivered to Reading Crane. (ECF 26-1, ¶ 13.)

23. On October 6, 2014, Reading Crane acknowledged receipt of the hoists and advised David Round that the hoists "passed a 125% load test without incident." (ECF 26-4, p. 18.)

24. On October 13, 2014, Reading Crane, at the request of Exelon, had a third party testing company perform additional EMF tests. During these tests, the Magnetek variable frequency drive on one of the hoists faulted while lowering a 30,000 lb. load. The recorded drive fault was "overvoltage." (ECF 26-2, ¶ 6; ECF 26-4, pp. 20-24, 26-30.)

25. On October 16, 2014, Reading Crane chose to return the hoists to David Round for inspection and re-testing. (ECF 25-13.)

26. During additional testing on October 27, 2014 and on October 30, 2014, at least one of the hoists experienced a fault caused by "overvoltage." (*Id.*)

27. David Round then performed an in depth root cause analysis to identify the cause of the

    issue. (ECF 26-2, ¶ 8; ECF 26-4, pp. 2-30.) In the analysis, dated November 3, 2014,

    David Round's Director of Engineering, William W. Darm, P.E. ("Darm"), noted that:

> Reading Crane performed load tests on David Round hoists serial numbers 85950-1 and 85950-2 on or before October 13, 2014. Both units passed 100% and 125% load testing. Reading Crane performed an additional EMF test of David Round hoist S/N 85950-1 on October 13, 2014 at the request of their customer Exelon. During this test the Magnetek variable frequency drive faulted while lowering a 30,000 lb. load. The hoist would not lift or lower the load. The recorded drive fault was 'Overvoltage.'

28. In his conclusion, Darm wrote:

> Reading Crane and Exelon specified that Magnetek drives be used for these hoists. Magnetek drives are not standard issue for a David Round Hoist and as such we have limited experience dealing with the peculiarities of these drives. Our Magnetek representative confirmed that the overvoltage fault is the one fault that cannot be cleared using the auto reset function. He also stated that these drives are notoriously sensitive to overvoltage faults if used with a hoist that has a load brake, particularly at high loads. At no point in any of the testing performed by Reading Crane or David Round did the load brake fail to operate as designed. All problems incurred during testing were the result of the programming/design of the customer specified Magnetek drive. (ECF 26-4, pp. 26-30.)

29. Magnetek advised David Round that the issue could be corrected by adding a dynamic

    braking resistor to the hoists. (*Id.*)

30. On November 12, 2014, Reading Crane requested that David Round ship the hoists back

    to Reading Crane. In response, David Round asked if Reading Crane wanted David

    Round to get the dynamic braking resistors or if Reading Crane's customer Exelon would

    handle it. Reading Crane's Project Engineer Albert Hewitt (Hewitt") replied: "Exelon is

    going to take care of the DB resistor. Please send the hoists back as-is." (ECF 26-4, pp.

    32-33.)

31.  On January 20, 2015,  Reading Crane advised David Round that Exelon had refused delivery of the hoists because of the hoists were not delivered on time due to both hoists failing load tests and because the headroom did not meet the specified requirements. Reading Crane stated that "per your own attached Terms and Conditions, Reading Crane & Engineering is considering both hoists to be defective in workmanship and is requesting an RMA number for return of both hoists and a full refund of the purchase price of each hoist." (ECF 26-4, pp. 35-36.)

32. By Letter dated February 3, 2015, Fitch responded by advising:

> The David Round Company and Reading Crane have a long history together and over 200 years of combined experience in the material handling industry. We look forward to a continued relationship with you.
> In response to your email dated January 20, 2015 directed to Mathew Downing and Bradley Young.
> The David Round Company manages ship date requests to the best of its ability but at times circumstances do arise that are out of our control. Vendor delays, employee issues and even the weather can delay manufacturing and deliveries.
> To address your concern on the headroom as you detail in the photo you provided. Our engineers work with a commercial tolerance for the throat depth of large capacity hooks of plus or minus three inches. If your customer absolutely requires a tighter tolerance we can modify the bottom blocks in order to accommodate you customer's needs.
> The David Round Company's Terms and Conditions of Sale state that "Any products found to be defective in material or workmanship will be repaired, replaced with same or similar device, or refunded at The David Round Company's sole discretion". As you know The David Round Company did choose to repair the units you purchased. The cause of the fault was the Magnetek Drive which was specified by your customer. These drives are not the typical drives that we have used for the last 10 years and we were unfamiliar nuances of those drives and Magnetek did not provide that information until we were having issues. Even though Magnetek drives may have been used in the past they are not a recommended choice for your customer's application. I believe this was discussed early on in the design phase of this project with our Engineering department.
> The requirement by your customer to use these drives cost The David Round Company a considerable amount of money and time due to the lack of vital information from the drive manufacturer when using their drives in an application to meet your customer's needs. Although it was assumed the problem was mechanical the actual problem with the

drives was found to be electrical. Once the proper information was received from the manufacturer the Magnetek drives worked as required.

　　We (Reading Crane and The David Round Company) have incurred significant costs due to your customer's choice. Costs that would have been avoided if your customer did not insisted on using these drives, and the drive manufacturer had supplied all of the documentation with the drive units. We have followed through with our Limited Warranty as stated in The David Round Company Terms and Conditions of Sale and will continue to do so but must ask you to take your customer's choices into account.

　　As stated above we have chosen to repair your purchase. Consequently, The David Round Company will not issue an RMA or refund the purchase price of each hoist. We will continue to work towards an amicable solution with you and ask for your input.

(ECF 26-4, pp. 38-39.)

33.  Fitch averred that "[o]rders such as the one made by Reading Crane for the hoists are built to order, non-cancellable and non-returnable upon acceptance of the purchase order. Such hoists are engineered and built per the specifications specified by the customer and special orders cannot be resold. The Reading Crane order was engineered and built pursuant to Reading Crane's specific requirements. This term was set forth in both the February 28, 2014 and April 15, 2014 David Round quotes, the latter of which was attached and incorporated in Reading Crane's May 20, 2014 purchase order."(ECF 26-3, ¶ 8.)

34. Darm testified that as David Round's engineer, he is responsible for the design of the hoists to the customer's requirements. (ECF 25-4, p. 39.)

35.  Darm testified that David Round chooses the component parts for a hoist it is building that meet the requirements as set forth by the customer. (ECF 25-4, pp. 14-15, 40), and that he, as David Round's engineer, specified which Magnetek drives would be applicable to Reading Crane's Order.  (*Id*. pp. 29, 32.) Darm also testified that he verbally recommended to Reading Crane that it should not use a Magnetek drive. (*Id*. p. 32.)

36. Darm testified that David Round would not supply a hoist to a customer without the dynamic braking resistor added. (*Id*. p. 84.)

37. Reading Crane's expert, Jan Zdrazil, P.E. ("Zdrazil"), wrote in his report that "[David Round] was responsible for the design of the hoists and their component parts. Therefore, any delays associated with DRC's failure understanding characteristics of the Magnetek drives rests solely with DRC. It is also my Opinion that the hoists did not meet the specifications as set forth in the approval drawings prepared by [David Round]."(ECF 25-17.)

38. With regard to the specified clearance requirements, Darm testified that since Reading Crane's "specifications" required 36 inches of headroom but did not specify to a tenth of an inch, there was an understood "commercial tolerance" of plus or minus a 1/16th to ½ inch. (ECF 25-4, pp. 43-44.)

39. Zdrazil wrote that per the approval drawing a/k/a plans prepared by [David Round], the specified tolerance was .001 inches. (ECF 25-17, 25-18.)

40. Paragraph 1 of Reading Crane's Purchase Order Terms states, in pertinent part,

> In addition to any other expressed or implied warranties, Vendor specifically and expressly warrants that the supplies or materials being provided are merchantable and suitable for their intended use.
> (ECF 25-7.)

41. Paragraph 2 states, in pertinent part:

> Firm delivery requirements will be issued by Purchaser. Failure to comply with the delivery requirements may be deemed a material breach of the Purchase Order by Vendor. Time is therefore of the essence regarding the Purchase Order. If Vendor defaults in delivery of goods, Purchaser may cancel this Purchase Order, purchase similar goods and materials from any other person and hold Vendor accountable for any other damages, (*Id.*)

42. Paragraph 4 states, in pertinent part,

The Vendor, in addition to all other guarantees and warranties contained in this Purchase Order and the general contract, as well as those imposed by law and not in limitation of Purchaser's other legal rights, warranties and guarantee that its work is in strict and absolute accord with the contract, and that it shall, for a minimum of one year after the date of final acceptance of the general contract, perform any maintenance or corrective work, without cost as directed by purchaser
(*Id.*)

43. Paragraph 14 states, in pertinent part:

 In the event of litigation between Purchaser and Vendor, if Purchaser prevails, Vendor will be liable by Purchaser for all awards or judgments as well as professional fees and costs including counsel fees incurred **(***Id.***)**

44. Although David Round was provided the opportunity to depose witnesses,

it elected not to do so.

David Round argues that it is entitled to summary judgment because under the Limited Warranty provision contained in its standard Terms and Conditions of Sale which was attached to the April 15, 2014 Quote it sent to Reading Crane, David Round had the sole discretion to repair, replace or refund any products found to be defective in material or workmanship. In this case, David Round chose to repair the two hoists. David Round contends that its April 2015, 2014 Quote constituted the offer and Reading Crane's May 20, 2014 Purchase Order constituted the acceptance thereby forming a contract. Since David Round's standard Terms and Conditions were attached to its April 15, 2014 Quote (the offer), David Round argues that the standard Terms and Conditions are part of the contract with Reading Crane.

Reading Crane contends, however, that David Round's standard Terms and Conditions are not part of the contract with David Round because it was Reading Crane's Purchase Order and not David Round's April 15, 2014 Quote which constituted the offer in this case and it was David Round's Order Acknowledgment, which did not contain its standard Terms and

11

Conditions, that constituted the acceptance. According to Reading Crane, since David Round's Terms and Conditions were never part of the contract entered into between the parties, David Round's standard Terms and Conditions are merely unaccepted proposals that do not control the parties' dispute. Rather, argues Reading Crane, it is Reading Crane's Terms and Conditions which Reading Crane attached to its Purchase Order and to which David Round did not object in its Order Acknowledgment, that govern the parties' dispute.

David Round responds that because Reading Crane supplied specifications to and requested a quote from David Round and the April 15, 2014 Quote David Round prepared was detailed with many specifications, the Quote constituted the offer and Reading Crane's Purchase Order, in which Reading Crane referenced David Round's April 15, 2014 Quote and to which Reading Crane attached a copy of the Quote, constituted the acceptance. Accordingly, insists David Round, its standard Terms and Conditions, which were attached to its April 15, 2014 Quote, govern the parties' dispute.

## DISCUSSION

The Pennsylvania Uniform Commercial Code, 13 Pa.C.S. § 1101-9507, does not define the term "offer." Generally, price quotes are not considered an offer, but rather "mere invitations to enter into negotiations or to submit offers." *Bergquist Co. v. Sunroc Corp.,* 777 F. Supp. 1236, 1248 (E.D.Pa. 1991); *cf. Dean Foods Co. v. Brancel,* 187 F.3d 609, 619 (7th Cir. 1999) (price quote commonly deemed invitation to offer rather than offer even if directed at particular customer). Rather, it is the buyer's purchase order which sets such terms as product choice, quantity, price, and terms of delivery that usually constitutes the offer. *See Audio Visual Assocs. v. Sharp Elec. Corp.,* 210 F.3d 254, 259 (4th Cir. 2000).

However, some price quotes are sufficiently detailed to be deemed offers, which turn a subsequent document from a buyer containing a positive response into an acceptance. *See Bergquist,* 777 F. Supp. at 1248; *see also White Consol. Indus., Inc. v. McGill Mfg. Co.,* 165 F.3d 1185, 1190-91 (8th Cir. 1999) (holding price quotation may constitute offer if sets forth sufficient detail and contract can be formed by acceptance of its terms); *Reaction Molding Techs. v. Gen. Elec. Co.,* 585 F. Supp. 1097, 1106-07 (E.D.Pa. 1984) (Lord, J.) ("*Reaction Molding I*") (price quote sent in response to buyer's request supplying property, price, terms of payment and delivery terms sufficient to constitute offer); *cf. F. Schumacher & Co. v. Silver Wallpaper & Paint Co.,* 810 F. Supp. 627, 633 (E.D.Pa. 1992) (Brody, J.) (refusing to consider price list as offer because lacked terms of "quantity and commitment.")  For a quote to constitute an offer, the seller "`must intend that the contract exist upon acceptance of the offer; that is, it must reasonably appear from the price quotation that assent to that quotation is all that is needed to ripen the offer into a contract.'" *Bergquist,* 777 F. Supp. at 1249 quoting *Quaker State Mushroom v. Dominick's Finer Foods,* 635 F.Supp. 1281, 1284 (N.D.Ill.1986)

In this case, David Round's April 15, 2014 Quote was indeed quite specific. The three-page Quote contained the price for the two custom-built hoists, detailed product specifications, payment terms, shipping terms and a delivery schedule. (ECF 26-4, pp. 10-12.) In addition, the Quote resulted from negotiations between the parties in that Reading Crane requested the Quote and provided the custom-made product specifications to David Round.

However, paragraph 4 of David Round's standard Terms and Conditions, which were specifically incorporated into its Quote, states as follows:

> ORDERS: All orders are subject to acceptance by The DAVID ROUND COMPANY. THE DAVID ROUND COMPANY'S booking of an order shall constitute its acceptance of an order.

(ECF 26-4, p. 7.)

Under the clear terms of this provision, all orders from a buyer such as Reading Crane were subject to David Round's acceptance. Indeed, during his deposition, Fitch admitted that that David Round would not "have considered the order accepted prior to the order acknowledgment being issued," (ECF 25-9, p. 12) and David Round "had not agreed to fulfill [the] purchase order until the acknowledgment was sent out." (*Id*. p. 42.) As a result, pursuant to David Round's own terms, it cannot be concluded that Reading Crane's assent to David Round's Quote was all that was needed to ripen the David Round's Quote into a contract. *See Kraft Foods North America, Inc. v. Banner Engineering & Sales*, 446 F. Supp. 2d 551, 569-570 (E.D. Va. 2006)("Given that price quotations are typically nothing more than invitations to enter into negotiations, and that Banner's terms and conditions stated that all orders are subject to Banner's acceptance, the Court concludes that Banner's quotation was not an offer." ); *Quaker State Mushroom*, 635 F. Supp. at 1284 ("A price quotation that is subject to the seller's confirmation is not an offer since the buyer's assent will not consummate the contract.") *McCarty v. Verson Allsteel Press Co.,* 89 Ill. App. 3d 498, 508, (1st Dist.1980); *West Penn Power Co. v. Bethlehem Steel Corp.,* 348 A.2d 144, 152 (Pa.Super.1975)

Downing's averment that the only reason he sent out the Order Acknowledgment was because Reading Crane's Purchase Order contained a copy of the April 15, 2014 Quote is belied by Fitch who testified that David Round always sends out an Order Acknowledgment. (ECF 25-9, pp. 13-14.) The averment is also contrary to paragraph 4 of David Round's own standard Terms and Conditions which specifically states that "THE DAVID ROUND COMPANY'S booking of an order shall constitute its acceptance of an order." (ECF 26-4, p. 7.)

David Round's May 20, 2014 Order Acknowledgment, which essentially booked Reading Crane's order, constituted an acceptance to Reading Crane's Purchase Order. Therefore,

the Court finds that David Round's April 15, 2014 Quote was not an offer, but merely an invitation to enter into negotiations and the terms and conditions in David Round's Quote were never more than proposed terms and conditions.

The Purchase Order specifically stated that it was "subject to attached Reading Crane & Engineering Conditions of Sale." (ECF 26-4, p. 14.) In addition, contrary to the terms of David Round's April 15, 2014 Quote, the Purchase Order also listed September 8, 2014 as the "Date Required" for delivery of the hoists. (*Id.*) David Round accepted this offer and its terms when it faxed its Order Acknowledgment to Reading Crane on May 20, 2014.

Unfortunately for David Round, there is no evidence from which a reasonable jury could find that it included its standard Terms and Conditions with its May 20, 2014 Order Acknowledgment. To the contrary, Lake averred that "[a] review of Reading's records does not indicate David Round's "standard terms and conditions" were attached to the Order Acknowledgment." (ECF 25-2, ¶ 8.) Fitch testified that while David Round's standard Terms and Conditions always accompany its Order Acknowledgments, he ultimately did not know, despite having tried to determine, if the standard Terms and Conditions accompanied the May 20, 2014 Order Acknowledgment. (ECF 25-9, pp. 13-14.) Downing did not aver whether he included the standard Terms and Conditions with the May 20, 2014 Order Acknowledgment. In the absence of evidence that David Round's standard Terms and Conditions accompanied its Order Acknowledgment, the Court finds, as a matter of law, that the terms and conditions attached to Reading Crane's Purchase Order control.

David Round argues that its standard Terms and Conditions are nevertheless part of the contract between the parties because the Purchase Order not only expressly referenced the April 15, 2014 Quote, but also contained a copy of the Quote.

In the first instance, Lake averred that the Purchase Order mentioned the Quote only to provide a description of the product being purchased and was "not an acceptance of David Round's quote or the terms contained therein." (ECF 30, Ex. A, ¶ 4.)  In addition, while Reading Crane's Purchase Order did reference David Round's Quote, the Purchase Order also stated that the Purchase Order is subject to attached Reading Crane & Engineering Conditions of Sale. Thus, the terms and conditions in Reading Crane's Purchase Order which constituted the offer and to which *David Round did not object in its Order Acknowledgment* superseded the terms and conditions in David Round's Quotation and are part of the contract between Reading Crane and David Round.

In sum, the Court finds, as a matter of law, that Reading Crane's Purchase Order of May 20, 2014 and the terms and conditions incorporated therein, constituted the offer in this case and David Round's Order Acknowledgment of May 20, 2014 constituted the acceptance. David Round's standard Terms and Conditions are not part of this contract between Reading Crane and David Round.

The Court, having now decided which documents constituted the contract between Reading Crane and David Round, believes it would be beneficial to both sides, who are sophisticated business entities with a long history of doing business with each other, to schedule a settlement conference forthwith.

**16**